**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRETT C. HARVEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-1448 (GK)** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff, Brett C. Harvey, brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff challenges the denial of his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"), pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1382 et seq., respectively.

This matter is before the Court on Plaintiff's Motion for Reversal of Judgment [Dkt. No. 8] and Defendant's Motion for Judgment of Affirmance [Dkt. No. 10]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Plaintiff's Motion for Reversal of Judgment is hereby **granted,** and Defendant's Motion for Judgment of Affirmance is hereby **denied.**

**I.  BACKGROUND**[1]

    **A.  Procedural History**

Plaintiff applied for DIB and SSI on December 20, 2001 and January 29, 2003, respectively, alleging that he became disabled on October 26, 2001.  The Commissioner denied his applications on January 30, 2002.  Plaintiff filed for reconsideration, and on February 11, 2002, the Commissioner affirmed the denial of the applications.  On April 4, 2003, Plaintiff requested a hearing before an administrative law judge ("ALJ"), and the case was heard on October 21, 2003.  Plaintiff testified at the hearing, as did a vocational expert.

On May 5, 2004, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and therefore was not entitled to benefits under the Act.  He concluded that Plaintiff had the residual functional capacity ("RFC")[2] for a "full range of sedentary work."  AR at 19.

Specifically, the ALJ found: (1) that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability; (2) that his degenerative disc disease,

---

[1] The facts set forth herein are taken from the undisputed facts presented in the parties' briefs.  In addition, the Court also relies on facts contained in the Administrative Record ("AR").

[2] The RFC is the level of work that the claimant is able to physically perform on a sustained basis.  It is defined as "what you can still do despite your limitations."  20 C.F.R. §§ 404.1545, 416.945.

degenerative joint disease, insulin dependent diabetes, and obesity are considered severe pursuant to the relevant regulations; (3) that his impairments, though severe, did not meet or medically equal one of the impairments listed in the relevant regulations as presumptive disabilities; (4) that Plaintiff's allegations "are not totally credible"; (5) that Plaintiff has residual functional capacity for a "full range of sedentary work with carrying and lifting up to fifteen pounds, occasional squatting, bending, and stooping with walking and standing up to two hours in an eight hour workday and sitting up to six hours in an eight hour workday"; (6) that Plaintiff was unable to perform his prior work responsibilities; (7) that Plaintiff did have the capacity to perform the full range of sedentary work; and (8) based on his capacity for sedentary work, his age, education and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.25 and 201.19, and therefore Plaintiff did not suffer from a "disability" as defined in the Social Security Act. AR at 21-22.  The ALJ concluded that Plaintiff was not entitled to DIB or SSI.  AR at 22.

Plaintiff appealed the ALJ's decision on May 17, 2004, and the Appeals Council affirmed on October 29, 2004.  He subsequently filed this action.

**B.  Factual History**

Plaintiff is a 49 year old male resident of the District of

Columbia.  He has an eleventh grade education.  In the 13 years preceding his claims, Plaintiff's employment consisted of housekeeping and floor maintenance, primarily in the housekeeping department at George Washington University ("GWU").  Pl.'s Mot. at 3; see 20 C.F.R. §§ 404.1565(b), 416.965(b).  At GWU, Plaintiff stripped and waxed floors, shampooed carpets, and set up banquets and ballrooms for meetings.  This work required him to lift and carry 30-40 pound tables and run heavy machines.  AR at 257-59.  The vocational expert who testified at Plaintiff's hearing described his work as unskilled and medium in exertional nature.[3]  AR at 264.

Plaintiff alleges that he left work at GWU on October 26, 2001 due to diabetes, back and knee pain, and high blood pressure.  According to a consultative physician, Dr. Franklin Garmon, Plaintiff reported injuring his right knee in a roller staking accident nearly 30 years ago.  Though treated at the time, his knee became symptomatic again after he began experiencing back pain in 1997.[4]

Several doctors have examined and treated Plaintiff in connection with his back injuries, as well as for his knee injuries

---

[3] According to the regulations, medium work involves "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

[4] The record does not clearly indicate whether any specific event caused Plaintiff's back impairment.

and conditions of diabetic nephropathy, proteinuria, obesity, and hypertension--the principal bases for his SSI and DIB claims.  His primary treating physicians are Dr. Benjamin Blatt of the George Washington University Medical Center and Dr. Samir Patel of the Division of Renal Diseases and Hypertension of the GWU Medical Center.   Drs. Perry and D. Druckman, State Agency physicians, completed RFC assessments, and Dr. Garmon conducted a consultative examination.

Dr. Blatt began treating Plaintiff prior to 1997 and saw him every three to six months.   Two of his examinations are particularly relevant to this case.  His January 10, 2002 report concluded that Plaintiff suffered from "disc disease involving the lumbosacral spine which would preclude him working any further as a housekeeper or in any job requiring lifting over 15 lbs, walking, kneeling, pushing or pulling."  AR at 120.  Dr. Blatt referred Plaintiff to physical therapy and noted that his magnetic resonance imaging ("MRI") was pending.  Id.

Plaintiff's September 18, 2002 MRI indicated that

The L3-L4 and L4-L5 discs are dessicated and mildly
bulging.  There is also mild bulging at L5-S1.  This is
superimposed on degenerative facet joints and hypertrophy
of the ligamentum flavum, resulting in central canal
stenoses[5] from L3-L4 through L5-S1, most severe at L4-L5.
There is also bilateral foraminal stenosis, most severe
at the right L4-L5 level where there appears to be
impingement on the exiting right L4 nerve root.

---

[5] Stenosis is an abnormal narrowing of a duct or canal.  Pl.'s
Mot. at 8 n.15.

AR at 133.  Dr. Blatt again examined Plaintiff after the MRI, on January 10, 2003, and diagnosed him with "L3-L4, L4-L5, L5-S1 disc disease with severe canal stenosis + foraminal stenosis."  AR at 137.  He concluded that Plaintiff was "totally disabled" and certified that he was "unable to engage in any substantial, gainful activity by reason of medically determined physical or mental impairment."  AR at 132, 137.

Dr. Patel was Plaintiff's nephrologist.  On October 1, 2001, he diagnosed Plaintiff with proteinuria most likely due to diabetic nephropathy, and noted that Plaintiff also suffered from diabetes mellitus, hypertension, and chronic upper back and shoulder musculoskeletal pain.  AR at 108.  He counseled Plaintiff on the importance of complying with his medical regimen in order to control his diabetes, and advised him to stop smoking and follow a low sodium diet.  Id.

Plaintiff saw Dr. Patel again on October 18, 2001, and reported sciatica[6] worsened by work.  AR at 105.  On November 26, 2001, Dr. Patel reported that Plaintiff was on disability and that his low back pain was improving.  He again noted that Plaintiff was overweight.  AR at 104.  On January 17, 2002, Dr. Patel noted that

---

[6]   A syndrome characterized by pain radiating from the back into the buttock and into the lower extremity.  Pl.'s Mot. at 7 n.3.

-6-

Plaintiff, who is five feet nine inches tall,[7] weighed 318 pounds, which he recorded as obesity. AR at 103. Dr. Patel saw Plaintiff again on March 14, 2002 as a result of his reports of right back pain and chronic lower back pain. AR at 100. He diagnosed Plaintiff with uncontrolled hypertension, obesity, and hyperlipidemia. Id. On May 20, 2002, Dr. Patel indicated that Plaintiff continued to walk, but only short distances because of his back and knee pain. AR at 98. His hypertension was under "fair control" but not at target, and he was still obese, at 308 pounds. Id.

Plaintiff saw Dr. Garmon for a consultative examination "for evaluation of his right knee and his left knee" on February 27, 2003. AR at 138. Dr. Garmon noted Plaintiff's knee pain but indicated that examination showed no visual abnormalities, that Plaintiff was able to move his knees and squat, and that the x-rays indicated no evidence of fracture or dislocation but did indicate sclerosis in the right knee. AR at 139-40. He also found that Plaintiff's back mobility was normal, but that weight reduction would help to relieve Plaintiff's knee pain and likely some of his back pain. Id.

Drs. Perry and Druckman examined Plaintiff on January 28, 2002 and March 18, 2003, respectively. Dr. Perry diagnosed Plaintiff

_____

[7] Plaintiff's height is recorded elsewhere in the record as five feet seven inches.

with degenerative arthritis, diabetes and L5 disc disease.  AR at 124-26.  He concluded that Plaintiff was "independent, takes short walks," and that he was not precluded from sedentary work activities.  AR at 126.  Dr. Druckman diagnosed Plaintiff with sciatica and arthritis, and noted his morbid obesity as another alleged impairment.  AR at 144.  He noted that the MRI "reportedly shows canal stenosis."  AR at 146.  Dr. Druckman also indicated that Plaintiff's symptoms appeared to have improved.  AR at 149-50.

## II. STANDARD OF REVIEW

The district court must affirm the Commissioner's decision regarding a claimant's disability if there is "substantial evidence" in the record to support the decision, and if the Commissioner applied the correct legal standard.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Simms v. Harris, 662 F.2d 774, 777 (D.C. Cir. 1980).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "[T]he ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'"  Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004) (quoting Simms v. Sullivan, 877 F.2d 1047, 1050 (D.C. Cir. 1989)).

Although the substantial evidence standard of review accords

-8-

considerable deference to the Commissioner's decision, <u>see</u> <u>Davis v.</u>
<u>Heckler</u>, 566 F. Supp. 1193, 1195 (D.D.C. 1983), the reviewing court
remains obliged to carefully scrutinize the entire record.   <u>See</u>
<u>Simms v. Sullivan</u>, 877 F.2d at 1050 (reviewing court must determine
whether the Commissioner, acting through the ALJ, "has analyzed all
evidence and has sufficiently explained the weight he has given to
obviously probative exhibits") (internal citations and quotations
omitted); <u>Martin v. Apfel</u>, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) ("It
is reversible error for an ALJ to fail in his written decision to
explain sufficiently the weight he has given to certain probative
items of evidence.").

Additionally, courts in this Circuit have liberally construed
the Social Security Act in favor of a finding of disability, so as
to give effect to the remedial purposes of the Act.   <u>See</u> <u>Davis v.</u>
<u>Shalala</u>, 862 F. Supp. 1, 4 (D.D.C. 1994) (noting that "the broad
purposes of the Social Security Act require a liberal construction
in favor of disability"); <u>Lockard v. Apfel</u>, 175 F. Supp. 2d 28, 30
(D.D.C. 2001) (same); <u>Taylor v. Heckler</u>, 595 F. Supp. 489, 493
(D.D.C. 1984) (same); <u>Champion v. Califano</u>, 440 F. Supp. 1014, 1018
(D.D.C. 1977) (same).

## III. Analysis

Plaintiff requests that this Court reverse the decision of the
ALJ or, in the alternative, remand the matter back to the Social
Security Administration for a new hearing.  Plaintiff contends that

the ALJ's decision is improper because he (1) provided no explanation for his rejection of the opinion of Plaintiff's treating physician that Plaintiff was totally disabled; (2) failed to properly consider Plaintiff's obesity in his evaluation of Plaintiff's impairments; (3) failed to consider the combined effect of Plaintiff's impairments on his ability to work; and (4) failed to properly evaluate Plaintiff's pain.

**A.   The Governing Law**

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The inability to engage in substantial gainful activity includes the inability to perform the claimant's previous work or "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Claims for Social Security benefits are evaluated using a sequential five-step process. See 20 C.F.R. §§ 404.1520, 416.920; Brown, 794 F.2d at 705-06 (summarizing the five-step process). A

-10-

claimant may be found to have no disability at any one of the sequential steps.  See Bowen v. Yuckert, 482 U.S. 137, 148 (1987).

First, the claimant must prove that s/he has not engaged in "substantial gainful activity" since the onset of the impairment. 20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that s/he has a "severe" "impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  In the third step, the claimant must show that s/he suffers from one or more impairments listed in the "Listing of Impairments" in the Commissioner's regulations and that meets the duration requirement.  20 C.F.R. §§ 404.1520(d), 416.920(d).  In the fourth step, the claimant must show that s/he is incapable of performing work that s/he did in the past.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant prevails on the first four steps, the fifth step shifts the burden to the Commissioner to determine whether the claimant can adjust to other work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner can meet this burden through the testimony of a vocational expert in order to ascertain the specific jobs that would accommodate the claimant's specific RFC. 20 C.F.R. §§ 404.1566, 404.1569.  If the Commissioner considers the opinion of a vocational expert in determining the claimant's ability to perform other work, s/he must accurately describe the claimant's

condition in any question posed to the vocational expert.  <u>See</u>
<u>Diabo v. Sec'y of Health, Education and Welfare</u>, 627 F.2d 278, 283
(D.C. Cir. 1980) (the hypothetical question addressed to the
vocational expert must "encompass all relevant impairments"); <u>Simms</u>
<u>v. Sullivan</u>, 877 F.2d at 1050 (same).

**B.   The ALJ's Decision Was Not Supported by Substantial
Evidence.**

**1.   The ALJ Offered Insufficient Explanation for His
Decision to Reject the Opinion of Plaintiff's
Treating Physician, Dr. Blatt**

Plaintiff contends that the ALJ erred in failing to credit the
opinion of Dr. Blatt, who was one of Plaintiff treating physicians
for at least five years.  Dr. Blatt's January 10, 2002 report
stated, "[i]n my opinion Mr. Harvey has disc disease involving the
lumbosacral spine which would preclude him working any further as
a housekeeper or in any job requiring lifting over 15 lbs, walking,
kneeling, pushing or pulling.  He is totally disabled from doing
his present work."  AR at 120.  After receiving Plaintiff's
September 18, 2002 MRI results, on January 10, 2003, Dr. Blatt
found that Plaintiff was "totally disabled" due to his "L3-L4 and
L5-S1 disc disease with severe canal stenosis + foraminal
stenosis."  AR at 137.  He certified that Plaintiff "is unable to
engage in any substantial, gainful activity by reason of medically
determined physical or mental impairment which can be expected to
result in death, or to be of long-term and indefinite duration."

AR at 132.

This Circuit has adopted the "treating physician" rule.  See Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987).  Pursuant to this rule, substantial weight is accorded to the opinions of a claimant's treating physician because he or she is generally more familiar with the claimant's condition.  See id.  In practice, this means that "[t]he treating physician's opinion regarding an impairment is usually 'binding on the fact-finder unless contradicted by substantial evidence.'"  Williams v. Shalala, 997 F.2d 1494, 1498 (D.C. Cir. 1993) (internal citations omitted). Thus, an ALJ who rejects the opinion of a treating physician must fully explain the reasons for doing so.  See id. at 1498; Simms v. Sullivan, 877 F.2d at 1052-53.

In his evaluation of the evidence in this case, the ALJ listed the reports of Plaintiff's treating and consultative physicians. He cited to Dr. Blatt's January 10, 2002 pre-MRI report that Plaintiff "was unable to lift more than fifteen pounds, no prolonged walking, no kneeling, pushing or pulling or working at his job as a housekeeper."  AR at 18.  The ALJ's reference to Dr. Blatt's January 10, 2003 post-MRI report, however, was limited to a notation that Plaintiff "uses a cane and has movement difficulties due to the nephropathy and the stenosis and disc disease."  Id.  The ALJ's decision contains no reference to the findings in the MRI report or to Dr. Blatt's crucial finding of

-13-

total disability.

The ALJ found that Plaintiff was capable of "squatting, bending, and stooping with walking and standing up to two hours in an eight hour workday." AR at 21. This finding conflicts directly with both Dr. Blatt's pre-MRI and post-MRI reports. Dr. Blatt's pre-MRI found Plaintiff incapable of "lifting over 15 pounds, walking, kneeling, pushing or pulling." AR at 120. The ALJ offered no explanation for rejecting that evaluation, or for disregarding Dr. Blatt's January 10, 2003 evaluation of total disability. He concluded simply that "I do find that [Plaintiff] can perform work at the sedentary level. My assessment of [Plaintiff]'s abilities is supported by the evidence recited above." AR at 19. Such an explanation is insufficient under Williams.

Citing to three cases outside of this jurisdiction, Defendant responds that although the opinion of a claimant's treating physician is typically granted much weight, form reports such as those submitted by Dr. Blatt are not accorded significant weight. Def.'s Mot. at 6. The ALJ provided no such rationale for his rejection of Dr. Blatt's January 10, 2003 opinion. Moreover, two of the three cases Defendant cites hold that form reports cannot constitute substantial evidence on the basis of which the Commissioner may contradict the opinion of a treating physician. See Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir. 1993); O'Leary

v. Schweiker, 710 F.2d 1334, 1341 (8th Cir. 1993).  Thus, they do not support the principle that an ALJ can reject a treating physician's opinion simply because it is conveyed in a form report.

Defendant's third case upheld the ALJ's rejection of the treating physician's reports "because they were check-off reports that did not contain any explanation of the bases of their conclusions." Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). Dr. Blatt's January 10, 2003 report is not a check-off report; it contains numerous notations and explanations of his opinions.  The ALJ cannot properly reject such a report absent an explanation and substantial evidence.

Defendant also argues that less weight is accorded to the treating physician's assessment if it is unsupported or is inconsistent with other substantial evidence.  See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  See also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").  Defendant argues that the reports of Dr. Garmon, Dr. Druckman, and even Dr. Blatt's January 16, 2002 report are inconsistent with Dr. Blatt's ultimate finding of total disability and are consistent with the ALJ's conclusion.  Even if that were his rationale for rejecting Dr. Blatt's evaluation, the ALJ failed to explicitly indicate as much in his decision.

Moreover, as Plaintiff points out, Dr. Blatt's January 10, 2003 report is supported, not contradicted, by the September 18, 2002 MRI test results evidencing central and foraminal stenosis at the L3-L4 level, and severe canal and bilateral stenosis at the L5-S1 level.   The reports cited by Defendant do not constitute substantial contradictory evidence.

First, Dr. Blatt prepared his January 16, 2002 report before reviewing any MRI results, and he cautioned in that report that the MRI results were pending.   Second, the reports of the consultative physicians, Drs. Druckman and Garmon, which are entitled to less weight than reports of treating physicians, do not effectively contradict Dr. Blatt's finding of total disability.   Dr. Druckman's report, based on his March 18, 2003 examination, indicates that Plaintiff's "MRI . . . <u>reportedly</u> shows canal stenosis."   AR at 146 (emphasis added).   The logical inference to be drawn is that he did not see Plaintiff's MRI test results.   Dr. Garmon's report  of February 27, 2003 provided no indication that he had seen Plaintiff's MRI results, either.   Moreover, Dr. Garmon's examination focused principally on Plaintiff's right knee.   AR at 138-41.   Such evidence clearly is insufficient to contradict the report of Plaintiff's treating physician under <u>Williams</u>' substantial evidence standard.

**2.   The ALJ Considered the Combined Effect of Plaintiff's Impairments, Including His Obesity**

Plaintiff further contends that the ALJ erred in failing to

consider the effect of all of his impairments, including his
obesity, on his RFC.[8]  The ALJ is required to consider the combined
effect of all of the claimant's impairments.  See 20 C.F.R. §
404.1523 ("[W]e will consider the combined effect of all of your
impairments without regard to whether such impairment, if
considered separately, would be of sufficient severity."); Narrol
v. Heckler, 727 F.2d 1303, 1307 (D.C. Cir 1984).

A claimant's obesity must also be considered  in the ALJ's
evaluation.  Although the Social Security Agency removed obesity as
a separate listing from the Listing of Impairments in October 1999,
rulings promulgated by the Commissioner emphasize that obesity is
still considered "a medically determinable impairment" that must be
considered when evaluating disability.  SSR 02-01p, at *1, *3
(obesity is to be considered by the ALJ at all but step one of the
five-step sequential analysis).  This is because "[t]he combined
effects of obesity with musculoskeletal impairments can be greater
than the effects of each of the impairments considered separately."
Id. at *1.

The ALJ explicitly recognized his obligation to consider the

---

[8] There is no dispute that Plaintiff is obese; he is between
5 feet 7 inches and 5 feet 9 inches tall, and weighed between 300
and 330 pounds during all times relevant to this case.   Dr.
Druckman recorded Plaintiff's Body Mass Index as 48, which is Level
III "extreme obesity."   Social Security Ruling ("SSR") 02-01p,
Evaluation of Obesity, 2000 WL 628049, at *2 (Sept. 12, 2002)
[hereinafter SSR 02-01p].

combined effect of Plaintiff's impairments.   AR at 19.   He
correctly stated that in assessing Plaintiff's RFC, he

> must consider all symptoms, including pain, and the
> extent to which these symptoms can reasonably be accepted
> as consistent with the objective medical evidence based
> on the requirements of 20 C.F.R. §§ 404.1529 and 416.929,
> and Social Security Ruling 96-7p.   The [ALJ] must also
> consider any medical opinions, which are statements from
> acceptable medical sources, which reflect judgments about
> the nature and severity of the impairments and resulting
> limitations.

AR at 19.

Applying this analysis, the ALJ found that the medical record
did not establish that Plaintiff's impairments, "either singly or
in combination," met or equaled the criteria of a listed
impairment.   AR at 18-19.   Specifically, he found that Plaintiff

> has degenerative disc disease, degenerative joint
> disease, insulin dependent diabetes, and obesity,
> impairments that are 'severe' within the meaning of the
> Regulations but not 'severe' enough to meet or medically
> equal, either singly or in combination to one of the
> impairments listed in Appendix 1, Subpart P, Regulations
> No. 4.   Specifically, listings 1.02, 1.04 and 9.08 are
> not met.   Listings 1.02 and 1.04 are not met because the
> claimant's ability to ambulate has not been limited.   The
> claimant is still able to walk though one physician
> stated that the claimant needed a cane there is no other
> evidence showing that the claimant required assistance
> walking.   As for listing 9.08 the claimant's diabetic
> neuropathy has not resulted in disturbance of the
> claimant's gross and dexterous movements or gait or
> station, nor abnormal acidosis levels or visual problems.

Id.   He further found that Plaintiff's "disc disease is mild to
moderate; though his diabetes and hypertension is not fully

-18-

controlled it has not caused any end organ damage." AR at 19.  The ALJ took into account all of these findings, which he based on his analysis of the combination of Plaintiff's impairments, in finding that Plaintiff retains the RFC for a full range of sedentary work.

Moreover, despite Plaintiff's failure to specifically allege obesity as a disability justifying an award of SSI and DIB, the ALJ acknowledged that obesity should be considered in conjunction with Plaintiff's other impairments.  The ALJ recognized in his findings that Plaintiff's obesity is considered "'severe' based on the requirements in the Regulations 20 C.F.R. §§ 404.1420(c) and 416.920(b)." AR at 21.  Considering Plaintiff's obesity, the ALJ found that Plaintiff could perform work at the sedentary level.  AR at 19.  In reaching this finding, the ALJ cited to the fact that Plaintiff's cane was not prescribed by a physician, and he cited to Plaintiff's testimony that Plaintiff could only stand for five to ten minutes, sit for twenty minutes, and walk about half a block. Id.  The ALJ expressly included Plaintiff's obesity in his findings regarding Plaintiff's ability to ambulate and in his conclusions regarding Plaintiff's RFC.

Accordingly, the Court finds that the ALJ properly considered the combination of Plaintiff's impairments, including obesity.

### 3.   The ALJ Failed to Consider Plaintiff's Pain

Plaintiff also contends that the ALJ failed to consider evidence of his pain.  "'Evidence of subjective pain is relevant

and probative to the [ALJ's] ultimate determination of disability,' although the [Social Security] Act makes clear that a subjective complaint of pain is not sufficient to establish disability; there must also be objective medical evidence of an underlying condition that would explain the pain." Simms v. Sullivan, 877 F.2d at 1051 (internal citation omitted); see also SSR 96-7p, Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1986); 20 C.F.R. §§ 404.1528(a), 404.1529, 416.928, 416.929. Although "a subjective complaint of pain is not sufficient to establish disability" on its own, a subjective complaint supported by "objective medical evidence of an underlying condition that would explain the pain" is sufficient to establish disability. Simms v. Sullivan, 877 F.2d at 1051.

"Once an underlying impairment that could reasonably be expected to generate the alleged pain has been established, the intensity, persistence and limiting effects of the pain must be evaluated 'to determine the extent to which the symptoms affect the individual's ability to do basic work activities.'" Butler, 353 F.3d at 1005 (citing SSR 96-7p, 1996 WL 374186, at *1). "This determination in turn requires 'the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.'" Id. This credibility assessment requires the ALJ to consider the entire case record and provide reasons for the credibility finding that are "sufficiently

specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." Id. (internal citations omitted).

Social Security Ruling 96-7p sets forth the process for evaluating the claimant's credibility.  The Ruling provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

In assessing the claimant's credibility, an ALJ must consider factors in addition to the objective medical evidence, including, inter alia, the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the medication the claimant takes; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board).  SSR 97-6p.

Plaintiff testified that his pain often restricts him from

leaving his home, and that he suffers from pain constantly.  AR at 242-43.  He consistently reported to his physicians that he suffered from back pain that radiated to his legs.  See, e.g., AR at 105, 119, 137.  He testified that he cannot stand for longer than two to three minutes at a time, and that the length of time he needs to sit or lay down in order to recover "depend[s] on how bad [his] back is throbbing."  AR at 248.

There is considerable objective medical evidence in the record explaining Plaintiff's pain.  Plaintiff's physicians diagnosed him with "disc disease involving the lumbosacral spine," "L3-L4, L4-L5, L5-S1 disc disease with severe canal stenosis + foraminal stenosis," and "mild degenerative joint disease."  AR at 120, 125, 137, 140.  After his consultative examination, Dr. Druckman diagnosed Plaintiff with sciatica.  AR at 144.  Plaintiff's lumbar spine MRI test of September 18, 2002 and his cervical MRI of August 11, 2003 indicate severe back injury.  AR at 134; see AR at 234.

Moreover, both of Dr. Blatt's reports indicate that Plaintiff experienced pain.  Dr. Blatt's January 10, 2002 report noted that Plaintiff "has right sided low back pain which began 2 years ago after lifting a heavy object.  His pain goes his right leg to his right foot. . . .  His job requires lifting heavy machinery, pushing and pulling and because of his back pain (and also bilateral knee pain), he can no longer perform his work."  AR at 119.  In his recitation of the evidence, the ALJ acknowledged Dr.

-22-

Blatt's report of Plaintiff's pain.   AR at 18 ("Dr. Blatt noted that the claimant complained of pain that goes down his right leg from his back and he has bilateral knee pain.").   Dr. Blatt's January 13, 2003 report also indicated that Plaintiff had "low back pain with radiation to both thighs."   AR at 137.

In his decision, the ALJ noted that in order to assess Plaintiff's RFC, he needed to "consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling 96-7p."   AR at 19.   The ALJ found that Plaintiff was "fairly credible based on the objective medical tests i.e. x-rays, MRI scans."[9]   AR at 19.   Despite his finding that Plaintiff's subjective complaints of pain were "fairly credible," and that they were supported by objective medical tests, the ALJ proceeded to conclude that Plaintiff "can perform work at the sedentary level."   Id.

Contrary to Defendant's contention, the ALJ did not expressly factor Plaintiff's pain in to his determination of the range of work Plaintiff was capable of performing.   See Def.'s Mot. at 12 n.9.   The ALJ made no statement at all regarding Plaintiff's pain, or whether his subjective statements of pain were supported by

---

[9]     The meaning of the phrase "fairly credible" is less than clear.

objective medical evidence.  Because the ALJ's decision fails to provide "specific reasons" for or any explanation of the "fairly credible" finding, and because it does not explicitly evaluate the underlying medical evidence that could reasonably result in the pain alleged, it must be reversed.

## IV. Conclusion

The ALJ's rejection of the report of Plaintiff's treating physician, and his failure to consider Plaintiff's pain, render his final decision unsupported by substantial evidence.  Accordingly, Plaintiff's Motion for Judgment of Reversal [Dkt. No. 8] is **granted**, and Defendant's Motion for Judgment of Affirmance [Dkt. No. 10] is **denied**.  The Court will **remand** the case to the Commissioner for further proceedings consistent with this Opinion. On remand, the ALJ must consider the January 10, 2003 report of Dr. Blatt, as well as the effect of Plaintiff's pain on his RFC.

An Order will issue with this Memorandum Opinion.


_/s/_____

May 22, 2007                    Gladys Kessler
                                United States District Judge


<u>**Copies to**</u>: **attorneys on record via ECF**

-24-